## WILLIAM POTTER, receiver of the MEDINA BANK, *v.* THE MERCHANTS' BANK OF ALBANY.

The cashier of a bank has the power to transmit a promissory note to another bank, for discount and collection, and to transfer the title thereto to the latter bank.

But a mere clerk, acting as cashier in the absence of that officer, has no authority to transfer any of the notes or securities of the bank, unless such authority has been given him by the directors.

The cashier can not clothe such clerk with any more of his power than is necessary to enable the latter to carry on the usual and ordinary business of the bank.

A clerk thus intrusted has power to transmit notes owned by the bank, or held by it for collection and payable in other places, or at other banks, to its agents, for that purpose; to indorse such paper for the bank, when necessary; and to vest in the collecting agents such title as is necessary and proper to accomplish that object. But he has no power to transfer any other or higher title thereto, and the agents will not, as against the bank, acquire any lien on the notes for any balance due from the bank.

The demand of a note sent to a bank, as agent, for collection, terminates the agency, and a refusal to return it will be evidence of a conversion.

The pendency of the action in which an order appointing a receiver was made may be proved by the recitals in the order.

Jurisdiction may be established, *prima facie*, by recitals in the record.

The Supreme Court, being a court of general jurisdiction, has by statute jurisdiction to appoint receivers in cases of insolvent corporations. And when an order is made appointing such an officer, the presumption is that all things were done required by the statute to be done, in order to authorize it to make such order.

In an action for the conversion of a promissory note, it is proper to instruct the jury that *prima facie* the damages which the plaintiff is entitled to recover are the amount which the maker of the note agreed to pay, and interest thereon.

It is competent for the defendant, in such an action, to prove the insolvency of the maker, and thereby lessen the damages; but in the absence of any evidence of a want of ability to pay, the presumption is that he is solvent, and able to pay the note.

The proper question to put to a witness, in order to arrive at the measure of damages, in such an action, is, "are the parties to the note solvent, and able to pay their debts?"

APPEAL from a judgment of the Supreme Court in the 8th district. The action was brought by the plaintiff as receiver of the Medina Bank, a banking association duly organized and doing business at Medina, in the county of Orleans, to recover damages for the conversion of a promissory note owned by the bank, made by John R. Weld, for the sum of $3000, to the order of Reuben S. Castle, payable ninety days from date at the Metropolitan Bank, New York; and the same was indorsed by said Castle. The note was dated the 16th of May, 1861. The facts proved, so far as they are necessary to an understanding of the case, are as follows: For some ten years prior to the 1st of June, 1861, the defendant had been the collecting agent for the Medina Bank, to which notes belonging to said bank were sent for collection, and the same were credited to the bank on the defendant's books, and the Medina Bank drew upon the defendant from time to time, and the said drafts were charged to the Medina Bank.

On the 3d of June, 1861, Timothy Baker, jun. was president, John M. Kennan cashier, and C. J. Beach clerk, of the Medina Bank. On that day said Beach, in the absence of the president and cashier, and while in charge of the bank pursuant to the directions of the cashier, but without authority from either the president or cashier so to do, inclosed said note to the defendant and directed it to be placed to the credit of the Medina Bank. Before being forwarded, one Brown, who had been president of said bank, wrote over the

indorser's name the words, "pay to the Merchants' Bank, or order." · The said note was received by the defendant, but the cashier refused to enter the note for discount, but did enter it for collection, and wrote to the Medina Bank on the 5th of June, informing it that the note had been received but was not indorsed by the bank, which was complained of as a strange proceeding, and demanding, as it would seem, authority from the bank to treat the note as the property of the bank. No authority was ever given. Notes not indorsed by the Medina Bank had been sent to the defendant, but very seldom. On the 4th of June the Bank of Medina stopped paying deposits, and on the 8th stopped paying its bills. On the 10th of June the plaintiff was appointed receiver. Before the commencement of this action the plaintiff demanded said note of the defendant, and the same was refused, on the ground that the Bank of Medina was indebted to the defendant, and that the defendant had a lien on the note for a balance of account due from the said Medina Bank to the defendant.

Evidence was given, on the trial, tending to show that at the time when the said Beach sent the note to the defendant, Brown, who filled up the indorsement on said note, had some interest in it, and that he had requested the cashier to forward the same to the defendant, who refused; and that the note was sent by Beach at his (Brown's) request. There was a verdict for the plaintiff for the amount of the note and interest. Judgment was then suspended, and the motion for a new trial directed to be heard in the first instance at the general term, and judgment to be there given. The general term denied the motion for a new trial, and ordered judgment for the plaintiff on the verdict.

*Learned & Cook,* for the appellant.

I. It is important to observe that this action is not brought on the ground of a transfer by the Medina Bank,

alleged to be illegal, on account of insolvency. If such had been the ground, the action would have been in equity, to set aside the transfer; not in *trover*, to recover the value of the property. No such issue as this was made in the pleadings, or tried at the circuit. But the action is such that (if maintainable at all) it might have been maintained by the Medina Bank, entirely solvent.

II. The judge erred in refusing to nonsuit the plaintiff. In order to show the plaintiff's title, it was necessary to show the pendency of the action in which he was alleged to have been appointed. No evidence was given under the allegations of fol. 6 of the complaint; but only under those of fol. 5; and these were put in issue. The power of the court to appoint a receiver of a corporation is statutory. (2 R. S. 464, m. p.; *Attorney General* v. *Utica Ins. Co.*, 2 John. Ch. 371; *Verplanck* v. *Mercantile In. Co.*, 1 Edw. 84; *Ferris* v. *Strong*, 3 id. 127; *Bangs* v. *McIntosh*, 23 Barb. 598.) Unless an action were pending, and such an action that a receiver might be therein appointed, the order has no validity. The order is not a record. The courts can not regard any proceeding as a matter of record, until it is enrolled. (*Croswell* v. *Byrnes*, 9 John. 287; *McKnight* v. *Dunlop*, 4 Barb. 36.) The recitals in the order are not a necessary part of the same, and have therefore no validity as evidence. Recitals in a surrogate's order showing jurisdiction prove nothing. (*Sibley* v. *Waffle*, 16 N. Y. R. 180.) To prove a judgment a *judgment record* must be shown, and not simply an *order* for' judgment. The plaintiff alleged the commencement of the suit. This was a material fact which should have been proved. (*Gillet* v. *Fairchild*, 4 Denio, 80.)

III. The judge erred in refusing to admit in evidence the testimony of the witness, 1st, as to the value of the note; and 2d, as to the responsibility of the maker of the note. 1. It would have been proper for the witness to state what, in his opinion, the note was worth. The question, though *in form* asking for an *opinion*, really asks for a *fact*. It

would certainly be proper to ask how high a certain tree was; how far apart two persons were at a certain time; how large a certain piece of ground was; how heavy a certain package was, and the like. Yet the answers to such questions (except in cases of actual measurement) must be, in one sense, *opinions;* but they are not *opinions* in the sense in which the law excludes them. These are questions in which the witness is asked for measurements of height, weight, &c. In like manner he may be asked to measure the *value* of any piece of property. See the cases thoroughly examined in *Clark* v. *Baird,* (9 N. Y. Rep. 183, 186, &c.) The rule is universal, without any exception as to species of property. (*Van Deusen* v. *Young,* 29 Barb. 9, 29.) In this state alone it has been applied to the cases of services, (*Lewis* v. *Trickey,* 20 Barb. 387;) of a stove, (*Smith* v. *Hill,* 22 id. 656;) of a cow, (*Joy* v. *Hopkins,* 5 Denio, 84;) of a horse, (*Rogers* v. *Ackerman,* 22 Barb. 134;) of fruit trees, (*Whitbeck* v. *New York Central R. R.,* 36 id. 644;) of a literary production, (*Babcock* v. *Raymond,* 2 Hilt. 61;) and of land, (*Clark* v. *Baird, supra.*) Nor is there any reason why the case of a note should be an exception. "A whole volume of descriptive testimony would not be so likely to guide a jury to a true estimate as the testimony of a single witness speaking his judgment as to the value." (*Clark* v. *Baird, supra.*) It can not be doubted that it would be proper to prove by the opinion of a competent witness the value of a rail road bond; even though it were a bond never quoted in the market. It would be impossible to prove all the numerous facts that go to fix that value. Indeed all that might be proved, for example, the prosperity of the road, the integrity of its officers, and the like, would not inform a jury what was the value of the bond. But a rail road bond is only a chose in action, like this note. 2. It would have been also proper for the witness to give his opinion of Castle's pecuniary responsibility. It would be impossible to prove responsibility, or the want of it, by showing in

detail the property which the person owned and the debts which he owed. A man is often known to be responsible by numerous persons who could not specify a single item of his property. Evidence was admitted in this case on behalf of the plaintiff of this very same kind.

IV. His honor the judge erred in refusing to charge as requested by propositions 9 and 10, and also in charging that the presumption of law was that the note was worth its face. 1. Presumptions are the result of a general experience of a connection between certain facts or things. (1 Green. Ev., § 33.) The question is, then, when a note is past due and protested, does general experience show that it will probably be paid? Before the note is yet payable, the presumption is that it will be paid; because experience shows that, in the great majority of cases, men will perform their contracts. But when the note is past due, that presumption is taken away by the positive fact that the contract has been broken. A new presumption now arises directly from the former, viz. that (as men generally perform their contracts, unless there be a good reason to the contrary,) there must be, in this case, either a defense to the note, or an inability to pay it. 2. Every one knows that in fact a note past due, is not worth in the market nor can it be sold for its face. The presumption is that it will *not* be paid; especially when payable at bank. Suppose it nearly outlawed. 3. A failure to meet paper, payable at a bank, is a suspension of payment, and *prima facie* evidence of insolvency. (*Brown* v. *Montgomery*, 20 N. Y. Rep. 287; *Johnson* v. *Bloodgood*, 1 John. Cases, 55.) His honor the judge erred in refusing so to charge, and in charging that the presumption was that the parties were responsible. The slightest examination of the testimony will show that the verdict of the jury was greatly increased by this charge.

V. His honor the judge erred in refusing to charge that the teller had authority to send the note, and in charging that the note was sent without authority. 1. The teller kept the

books; had the combination of the safe; was left in charge by the cashier, and conducted all the business of the bank, and as teller he sent the note. A part of the business of the bank was sending notes to the defendant. 2. A third person can not be affected by any private instructions to an agent. The principal is liable for acts done within the general scope of the agent's authority. (*Munn* v. *Comm. Comp.*, 15 John. 44; *Tradesman's Bank* v. *Astor*, 11 Wend. 87; Story on Agency, § 443.) 3. Suppose that the cashier, Kennan, contrary to the directions of the directors, had sent the note, it can not be doubted that this would have been a valid transaction as against the bank. Now, in the absence of the cashier, the duties all devolved on Beach; and the plaintiff can not insist that, in the performance of these duties, Beach violated his orders. (*Farmers' Bank* v. *Butchers' Bank*, 16 N. Y. Rep. 125.)

VI. His honor the judge erred in refusing to charge that the act of the teller was ratified, as requested. The Medina Bank was the principal, and Beach the agent. The note was sent June 3. The bank was notified of the fact June 6, by the defendant, and was asked to write. The bank never objected to the sending of the note. When the principal, being informed of the act of the agent, does not object within a reasonable time, he adopts and ratifies the act. (2 Kent's Com. 616; Story on Agency, § 258; *New Hope Bridge* v. *Phœnix Bank*, 3 Comst. 156, 166; *Armstrong* v. *Gilchrist*, 2 John. Cas. 423; *Benedict* v. *Smith*, 10 Paige, 126; *Johnson* v. *Jones*, 4 Barb. 369.) And this principle applies, although the agent has disobeyed his instructions. (*Cairnes* v. *Bleecker*, 12 John. 300.) Nor is any consideration necessary for such ratification. (*Comm. Bank* v. *Warren*, 15 N. Y. Rep. 577.) So the receipt of the overdue notes is a ratification of the whole transaction. A ratification of part is a confirmation of the whole. (*Farmers' Loan Co.* v. *Walworth*, 1 Comst. 433.)

VII. His honor the judge erred in charging that the de-

fendant was not a *bona fide* holder, and in refusing to charge
the contrary. 1. The question arises between the defendant
and the Medina Bank ; not between the defendant and creditors
of the Medina Bank. (See Point I.) No parting with value
is therefore necessary to make a *bona fide* holder. 2. Receiv-
ing for collection was a good consideration, and made the
defendant a *bona fide* holder. (*Allen* v. *Merch. Bank*, 22
Wend. 215 ; *Mont. Co. Bank* v. *Albany City Bank*, 3 Seld.
459 ; *Comm. Bank* v. *Union Bank*, 1 Kern. 203.) 3. This
note was received and entered for collection, according to
previous custom.

VIII. The defendant had a lien on the note for the balance
of account. 1. The note went directly from the possession
of the Medina Bank to the possession of the defendant. It
was sent by the person having at the time the actual and
legal custody and control thereof. 2. A banker has a lien on
all paper securities which come into his hands, for his general
balance against a customer. (2 Kent's Com. 641 ; *Davis* v.
*Bowshee*, 5 D. & E. 488 ; *Jourdaine* v. *Lefevre*, 1 Esp.
Rep. 66 ; *Brandas* v. *Barnett*, 12 Clark & Fin. 787 ; Grant
on Banking, [12 Law Lib.] 283, 284, 288.) 3. It would be
fatal to all banking business, if a customer could deprive the
banker of this lien by proof that the remittance of the secu-
rity had been made without express authority, or even con-
trary to directions, by a clerk intrusted with the transaction
of such business.

*S. E. Church*, for the respondent.

MULLIN, J. The Bank of Medina owned the note in
question, and in order that the defendant may retain it from
its lawful owner, it must appear that the defendant obtained
it *bona fide* before maturity, in the regular course of business,
and for value paid, or that said note was transferred to it by
the Bank of Medina, with the intention of transferring to the
defendant the title thereto.

It is not pretended that the defendant has paid value for

the note, or that it is entitled to be considered as the *bona fide* holder of commercial paper.

All questions, therefore, as to the presumed or implied authority of the officers of the Bank of Medina, which usually arise between banks and the *bona fide* holders of securities of the bank for holders, and which such officers have transferred or created in violation of their duty to the bank, are out of this case. And the inquiry is as to the actual power which the officer had in this case to transfer to the defendant this note, and thereby pledge the same as security for the debt of the bank.

The indorsement to the defendant was made by Brown, who was not at the time an officer of the bank, and although he had been, yet the defendant's cashier knew he was an officer no longer. So far then as the handwriting in which the indorsement was made could affect the question, the defendant knew it was not indorsed by any of the then officers of the bank.

The note was transmitted by Beach, who was a mere clerk, in the absence of the cashier of the bank. He was at the time of the transmission of the note acting as cashier, and clothed for the time with the powers of that officer, so far forth as the business of the bank demanded the services of that officer. STORY, J. in *Wilde* v. *The Passamaquody Bank,* (3 Monroe, 505,) discusses the power of the cashier as follows: "The cashier of a bank is, *virtute officii,* generally intrusted with the notes, securities and other funds of the bank, and is held out to the world by the bank as its general agent in the negotiation, management and disposal of them. *Prima facie,* then, he must be deemed to have authority to transfer and indorse negotiable securities held by the bank for its use and in its behalf. No special authority for this purpose need be proved. If any bank chooses to depart from this general course of business, it is certainly at liberty to do so, but in such case it is incumbent on the bank to show that it has interposed a restriction, and that such restriction

is known to them with whom it is in the habit of doing business." It can not be doubted but that the cashier had the power to transmit the note in question to the defendant for discount and collection, and to transfer the title thereto to the defendant. This would have been within the general scope of his authority as defined by Justice STORY, and in accordance with the practice of the bank for two years.

But although such was the power of the cashier, it does not follow that Beach while acting for the cashier had the same power. Beach as clerk had no authority to transfer any of the notes or securities of the bank. The directors had conferred on him no such power, and the cashier could not clothe him with any more of his power than was necessary to enable the latter to carry on the usual and ordinary business of the bank. Beach, in the absence of the cashier, had authority, undoubtedly, to pay checks, receive payment of notes and surrender them to the persons entitled, and, in a word, to do whatever was necessary and proper to be done in the ordinary course of business.

I do not doubt but that Beach had power to transmit notes owned by the bank, or held by it for collection, and payable in other places, or at other banks, to its agents for that purpose, and as, in order to do so, it becomes necessary to indorse the paper for the bank, he had power to make such indorsement. But he had no power to pledge its securities, unless they become pledged by the mere act of transmitting for collection.

It seems to me that Beach had the power to send forward this note for collection, and that the defendant legally acquired possession of it for that purpose.

The cashier had refused to send forward this note to the defendant. Whether Beach knew of this refusal does not appear, and we must assume that he did not. This refusal by the cashier shows that it was not the intention of the bank to transfer the note to the defendant, and Beach's authority was therefore limited to the making of such transfer

of the note as the interests of the bank required to be made. He could transmit it for collection, but could not otherwise transfer or dispose of it.

It is said that the defendant received the note in the usual course of business without notice of any want of authority on the part of the officer transmitting it to transfer it, and that they must be considered *bona fide* holders for value. I have already said that the defendant is not a *bona fide* holder for value, and it must rest its defense on the right acquired, if any, by possession of a note acquired through an officer of the bank in the same manner in which for two years past it had acquired title to notes from the Bank of Medina. But it was competent for the Bank of Medina at any time to cease to transmit to the defendant paper for discount or collection, and when it did so, the defendant could not legally acquire any title to or interest in the notes of that bank, unless through third persons.

The Bank of Medina did not transmit this note; nor did it assent to any transfer of it to the defendant. The act of Beach was wholly without authority and in favor of the bank if it was intended to do more than transmit the note for collection.

Again, the defendant must have known that the act of Beach, so far as it was claimed to amount to a pledge of the note, was unauthorized. Although notes had been sent to the defendant indorsed as this one was, yet it was so seldom done that the cashier could recall no instance of the kind, and knowing that mere possession of the note thus indorsed might not enable the defendant to hold it as against the bank, application was made for the indorsement of the bank, or evidence of a transfer by it to the defendant. This request was never complied with. The Bank of Medina, therefore, never authorized the transfer to the defendant, nor ratified it. It is true the bank did not repudiate the act of Beach. But it was not called on to do so, and its silence has not in any manner prejudiced the defendant.

I am of the opinion, therefore, that Beach had the power to transmit the note to the defendant for collection, and to vest in it such title as was necessary and proper to enable it to accomplish that object, but he did not have power to transfer any other or higher title thereto; and that the defendant did not, as against the plaintiff, acquire any lien on said note for any balance due from the Bank of Medina.

If I am right on this proposition, it becomes unnecessary to discuss the question whether a bank acquires a lien on the securities in its possession belonging to a customer, for any balance which may be due to it on account.

The defendant, after it acquired possession of the note, held it as the agent of the Bank of Medina for the purposes of collection, and as the demand was made before maturity of the note there is no ground for claiming that a title to it passed to the defendant. The demand terminated the agency, and the refusal was evidence of a conversion.

I do not deem it necessary to inquire what effect, if any, the pending insolvency of the bank had on the right of the officers of the Bank of Medina to transfer this note to the defendant, to apply on the balance due from it to the defendant, if there was an intention to transfer it; because there is no finding in the case whether, at the time of the transfer, insolvency was contemplated or even conjectured.

After the plaintiff closed his evidence the defendant moved for a nonsuit, on the grounds: 1st. That the pendency of an action in favor of Horton against the Medina Bank, in which the order for the appointment of a receiver purported to be made, was not proved; and 2d. That there was no evidence of the value of the note.

The only evidence in relation to the appointment of the receiver was a copy of the order of appointment, and the giving of a bond in conformity thereto. The pendency of the action was not proved, except by recital in the order, and the objection is that a fact material to jurisdiction can not, in a case like this, be proved by recital in an order or record,

but must be proved *aliunde*. It is urged that the power to appoint receivers in cases of insolvent corporations is given by statute, and the mode of procuring the appointment is fully and particularly prescribed; and although the Supreme Court is one of general jurisdiction, yet in the exercise of powers thus specifically conferred there is no presumption of jurisdiction in its favor; and in such cases it stands on the same footing with an inferior court. But it was held by this court in *Bangs* v. *Duckinfield*, (18 N. Y. Rep. 592,) that the Supreme Court in the appointment of a receiver, under § 36 (2 R. S. 463) of proceedings against corporations in equity, is a court of general jurisdiction, and not as exercising a special statutory power. The question then is, could the pendency of the action in which the order appointing the receiver was made be proved by the recitals in the order? It can not be denied that the pendency of the action, after personal service of the summons and complaint, and the appearance by the corporation on the motion, are fully recited.

There is a great diversity of opinion on the question; nevertheless I apprehend the weight of authority is in favor of the doctrine that jurisdiction may be established *prima facie* by recitals in the record. In 2 Cowen & Hill's Notes, 1016, the authors say: In New York we may safely consider these jurisdictional recitals as *prima facie* evidence; and they cite in support of the proposition *Barber* v. *Winslow*, (12 Wend. 102,) in which Justice NELSON, delivering the opinion of the Supreme Court, adopts the ruling in *Jenks* v. *Stebbins*, (11 John. 224.) These were cases of insolvents' discharges, and the recitals were in the record of an inferior jurisdiction. If recitals are evidence of the performance of acts necessary to be done to confer jurisdiction in one court, and for one purpose, they must be for all. There can not be one rule of evidence for the superior and another for inferior courts. In addition to the cases cited *supra* from our own reports, the following cases may be referred to: *Shumway* v. *Stilwell*, (4 Cowen, 292;) 6 Wend. 447; *Starbuck*

v. *Murray*, (5 id. 148;) *Borden* v. *Fitch*, (15 John. 141.) The cases in the courts of other states are collected in the notes to *Mills* v. *Duryea* and *McElmoyle* v. *Cohen*, (2 Am Lead. Cas. 719 and seq.) and it will be found that the courts agree that a recital in the record, of appearance or of service of process, is evidence of the fact recited, and they differ only as to whether the fact recited is conclusive or only *prima facie*. Our courts hold the recital *prima facie* only.

The case of *Sibley* v. *Waffle*, (16 N. Y. Rep. 180,) is apparently in conflict with the cases above referred to. In that case the plaintiff sued in ejectment, to recover four acres of land purchased by him at a sale made by the administrator of one Dusenbury, under an order of the surrogate of Monroe county. It appeared, on the trial, that the widow and all the heirs except two resided in the county of Monroe; the absent ones resided in Ohio. The order of sale recited the due publication of the order, and that the administrator had done all that was required by the statute to be done. But it also appeared, that the order of the surrogate requiring the heirs and next of kin to appear was not published in the state paper for the number of weeks required by the statute, to constitute a valid service on the absent heirs, and this court held the recital of due publication did not show jurisdiction in the surrogate to make the order of sale. The learned judge who delivered the opinion of the court did not refer to the cases cited, nor profess to overrule them or the principle established by them, and hence I conclude that all this court intended to decide was that the recital of due publication did not overcome the proof that the order to show cause was published only five instead of six weeks as required by the statute. If such was the view of the court, then, although full effect had been given to the recital, yet as it was only *prima facie*, it was overcome by direct evidence that jurisdiction was not acquired by the surrogate.

Whether a recital of a jurisdictional fact in a record is or is not evidence of such fact, I am of the opinion that in

the absence of any recital the law presumes that the court had jurisdiction to make the order in question. The court making it is a court of general jurisdiction, and it had by statute jurisdiction to appoint receivers in cases of insolvent corporations; and when an order is made appointing such officer, the presumption is that all things were done required by the statute to be done in order to authorize it to make such order. This conclusion seems to follow necessarily from the decision in the case of *Bangs* v. *Duckenfield,* cited *supra,* that in appointing a receiver in such cases the Supreme Court acts as a court of general jurisdiction, and not as exercising a special statutory power.

The instruction to the jury that *prima facie* the damages which the plaintiff was entitled to recover were the amount which the maker of the note agreed to pay and interest thereon, was correct. This is held to be the measure of damages, in 2 Philips' Ev., Cowen & Hill's ed. 228; 2 Parsons on Contracts, 471; *Decker* v. *Mathews,* (2 Kern. 324;) Sedgwick on Damages, 513; *Paine* v. *Pritchard,* (12 Eng. Com. Law Rep. 261.)

It was competent for the defendant to prove the insolvency of the maker, and thereby lessen the damages; but in the absence of any evidence of the want of ability to pay, the presumption is that he is solvent and able to pay the note. (*Walrod* v. *Ball,* 9 Barb. 271.)

It was insisted, on the trial, that the proper question to put to the witness in order to arrive at the measure of damages was, what was the value of the note? and the ground on which the right to put the question rests is, that such is the inquiry in all other cases where the value of property is sought to be recovered. The general rule is that the value of property must be ascertained by answers to the direct questions as to its value. And the reason is that persons are examined who know its value, and can speak from their own personal knowledge in relation thereto. But this rule can not apply to choses in action; they have no intrinsic

value, as a horse or an acre of land has. Their value depends on the pecuniary condition of the parties liable thereon. And hence, in such cases, the direct and proper inquiry would be, are the parties to a bill or note, or other chose in action, solvent and able to pay their debts? But as the law presumes that fact, in favor of the plaintiff, it is not necessary for him to prove it; and the burthen is therefore cast upon the defendant to disprove it.

I am of the opinion that the rulings on the trial were right, and that the judgment should be affirmed, with costs.

Denio, Ch. J. concurred upon the point respecting the value of the note; but was for reversal on the single ground of receiving in evidence the final order for appointment of receiver without proof of the preliminary proceedings.

Ingraham, J. concurred, except upon the point respecting the value of the note.

Selden, J. The only evidence which was produced by the plaintiff to show his title as receiver, was the order appointing him receiver, made at a special term of the Supreme Court, and the execution and filing of a bond in pursuance of the terms of the order. It is insisted that this is not sufficient, without additional proof showing the pendency of the action in which the order was made. Such further proof was not necessary. The appointment of a receiver was within the jurisdiction of the court; and where an order is made by a superior court which it has power to make under any circumstances, "all jurisdictional steps and matters of regularity are to be presumed." (*The People* v. *Nevins*, 1 Hill, 154, 159; *Foot* v. *Stevens*, 17 Wend. 483.) In making such appointment the court acts as one of general jurisdiction, and not under a special statutory power. (*Bangs* v. *Duckinfield*, 18 N. Y. Rep. 592.) The evidence, therefore, whether conclusive or not, was at least *prima facie* sufficient to establish

the plaintiff's title. "Nothing shall be intended to be out of the jurisdiction of a superior court, but what expressly appears to be so; nor within the jurisdiction of an inferior court but what is expressly alleged to be so." (*Peacock* v. *Bell,* 1 Saund. 74.)

The teller of the Medina Bank had no authority to transmit the note of Weld to the Merchants' Bank, and the latter bank refused to accept it on the terms on which it was transmitted. There was thus a double defect in the defendant's claim of title; and the refusal of the defendant to surrender the note on the demand of the plaintiff, amounted to a conversion of it. The right of the plaintiff to recover was therefore unquestionable. The only real controversy between the parties related to the amount of damages.

There was no error in the charge of the judge, or in his refusal to charge as requested. But on the trial, a witness, after testifying that he was acquainted with the parties to the note, and showing a somewhat intimate knowledge of their pecuniary condition, was asked by the defendant's counsel what, in his opinion, the note in question was worth. This question was excluded, and the defendant's counsel excepted. In this respect I think the court erred. As a general rule, undoubtedly, witnesses, other than experts, are required to testify to facts, and not to give opinions; but in determining the value of property, the well established rule in this state is otherwise; and I am unable to see any valid reason for making an exception in regard to the value of choses in action. It may be said that the witness can state the facts which go to determine the value, and that the jury will then be as capable of judging of the value as the witness. If the witness could state with perfect accuracy all the circumstances which constitute the basis of his own judgment, this position would be correct; but the impossibility of doing this has caused the adoption of the practice of allowing the witness to give his opinion upon questions of value, along with the

reasons, as far as he is able to give them, upon which such opinion rests. The argument in favor of confining the witness to the facts, and leaving the jury alone to deduce the conclusion, as to value, would apply with as much force to many of the cases where opinions are allowed as to the present case. (*Clark* v. *Baird*, 9 N. Y. Rep. 183.) For this error I think a new trial should be granted.

The other question addressed to the same witness, calling for his opinion in regard to the solvency of one of the parties to the note, was properly rejected. The question relating to the solvency of the maker, and that as to the value of the note, are by no means identical. There are many circumstances under which a note may have some value, although the maker be insolvent. The distinction between the two questions is not very broad, but that relating to solvency was not within the exception to the rule that opinions are not evidence, which is established in regard to the value of property, and I am not disposed to extend that exception to cases not clearly within it.

HOGEBOOM, DAVIES, WRIGHT and JOHNSON, JJ., were in favor of affirmance.

                                        Judgment affirmed.