## OCEAN STEAMSHIP CO. *v.* WILDER & CO.

1 A certified copy of an order of a court of general jurisdiction, by which receivers have been appointed for a named corporation, is, although unaccompanied with the pleadings in the case in which the receivers were appointed, admissible in evidence to establish the fact of the receivership.

2. A copy of the pleadings in a pending case, in which, by interlocutory order, receivers were appointed, is always competent and admissible for the purpose of showing that the court which made the order was without jurisdiction to do so. When, however, the evidence offered is not set out in the record, the question of its relevancy for this purpose is not here for adjudication, and this court can not, therefore, say its exclusion was, relatively to that matter, erroneous; but even if such appointment was void, defendant's liability for the wrongful act of a receiver so appointed would not necessarily follow.

3. The receipt of the goods for transportation, and the subsequent alleged conversion being shown to have been made and done by receivers who operated a steamship line under orders of the court which appointed them, and the evidence in no way connecting the defendant company with

either the receipt, the transportation, or the conversion, a verdict finding· damages against the latter for such conversion should have been set aside.

4. Under the agreement by which the money arising from the sale of the goods while in transitu was paid to the consignee, it can not be held that the plea which claimed the amount so paid, as a credit on the plaintiff's· demand, was an assumption of responsibility by the defendant for the· act by which such proceeds were received.

Argued February 8, 9, — Decided April 20, 1899.

Complaint in trover. Before Judge Norwood. City court of Savannah. April 1, 1898.

*Lawton & Cunningham*, for plaintiff in error.
*Charlton, Mackall & Anderson*, contra.

LITTLE, J. The assignments of error shown by the record' present a number of legal questions of both interest and im-- portance. · In the court below, the plaintiffs made several ex-- ceptions pendente lite, on which error was assigned. The trial having resulted in a verdict for the plaintiffs, the defendant assigned as error the overruling of its motion for a new trial, by which it presents many exceptions to the rulings and charge of the trial judge, which, if well taken, will work a reversal of` the judgment overruling the motion to set aside the verdict and grant a new trial, as a matter of law. The plaintiffs brought their petition to recover of the defendant the value of` certain cotton which the plaintiffs allege they had delivered to the defendant in the city of Savannah, to be transported by way'of New York to Naples. In one count of the petition it was alleged that the defendant, having received the cotton for ·transportation, converted it to its own use. In a second, it is· alleged that the defendant did not safely carry the cotton to· Naples, but so carelessly and negligently conducted itself in such carriage that the cotton was lost to the plaintiffs. The answer denied each allegation set out in the petition. One of` the main defenses to the action was, that at the time of the shipment of the cotton the property and assets of the defendant corporation were in the hands of receivers appointed by a court of competent jurisdiction, and that such receivers were operat- ing the steamships of the company, and if any conversion of` the cotton was made, it was by the receivers, not by the de--

fendant, and that the latter was in no way responsible therefor. In the view we take of the evidence in the record, this defense was perfectly made out, and a verdict for the plaintiffs could not have been legally rendered. It would, therefore, be wholly unavailing to consider and pass upon the several questions raised as to the liability of the defendant if it had been shown that it converted the cotton, and for this reason we shall confine ourselves to the consideration of questions of the delivery of the cotton for shipment, and the liability of the defendant for its conversion or loss, under the evidence submitted.

1. The first proposition to be determined is, whether the fact that the property of the defendant was in the hands of receivers at the time of the shipment was shown by legal and competent evidence. After the evidence for the plaintiffs had been concluded, the defendant offered certified copies of two orders of the fifth circuit court of the United States for the eastern division of the southern district of Georgia; the one made by the Hon. Emory Speer, United States Judge, July 15, 1892, in a cause pending in said court entitled The Central R. R. & Banking Co. of Ga. *vs.* The Farmers Loan & Trust Co. et al.; the second, by the Hon. Howell E. Jackson, Justice, in the case of Rowena M. Clark et al. *vs.* The Central R. R. & Banking Co. et al., and other pending cases stated. By the first of these orders, H. M. Comer was reappointed and continued as permanent receiver of "the Ocean Steamship Company of Savannah," and as such was authorized and directed to take possession of such corporation, its properties and assets of every kind, and operate the same, including its steamship lines, etc. By the same order, the corporations named, including the Ocean Steamship Company, their officers, servants and agents, were enjoined from in any way interfering with the possession, operation and management of said properties. By the second of said orders R. Somers Hayes was appointed coreceiver with H. M. Comer, of the properties and assets of the Central R. R. & Banking Co. of Ga., and of the auxiliary and dependent corporations named in the former order, the last of said orders having been made on the 7th day of October, 1893. The object of this evidence was to show that the cotton was received and forwarded by the

receivers of the Ocean Steamship Company, and not by the defendant. The plaintiffs objected to the admission of this evidence unless these orders were accompanied with the pleadings upon which they are based. The court overruled the objection and admitted said orders in evidence; to which ruling the plaintiffs excepted pendente lite.

There was no error in the admission of this evidence. This court, in the case of *Kerchner* v. *Frazier*, 106 *Ga.* 437, ruled that a decree in chancery, when offered to prove collaterally that such decree was made, is admissible, although not accompanied with the record in the case; but when offered as an adjudication on the subject-matter, it is only admissible when accompanied with a complete and duly authenticated copy of the proceeding in which it was rendered. There is, however, a wide difference between a decree in chancery and an order appointing a receiver in a pending case. A decree, being a final adjudication, fixes the rights of the parties, and the reason for excluding the decree when offered as an adjudication, unaccompanied with the pleadings upon which the decree was founded, is, that without such proof it may be impossible either to understand the decree itself, or to ascertain with certainty what disputed questions it decided. 3 Taylor, Ev. § 1574 a. The order appointing the receiver is an interlocutory order made in the discretion of the court, fixing no rights, but intended to preserve the property and estate of the corporation until a final hearing can be had, when a decree fixing the rights of the parties in the property will be rendered. It is but a method of taking such property into the possession of the court. In Beach on Receivers, 751, the author, citing 12 La. Ann. 298, says, "A certified copy of the order of appointment is considered prima facie proof that the proper parties were before the court when the appointment was made, but the defendant is at liberty to rebut this presumption." In the Law of Receivers of Corporations, by Gluck & Becker, page 6, it is said that "The usual method of proving the appointment of a receiver is to produce a duly authenticated copy of the order appointing the receiver, and to establish the fact of the giving of a bond in conformity thereto." The case of Potter *v.* Merchants Bank of Albany, 28

N. Y. 641, is cited as authority for this proposition, and the case fully supports the text. We are, therefore, clearly of the opinion that the court committed no error in admitting the certified copies of the orders unaccompanied with the pleadings in the pending cases, and that such orders, if nothing to the contrary be shown, establish the fact of the receivership at the respective dates of the orders.

2. During the trial and after the orders appointing the receivers had been admitted, the plaintiffs offered the record in the litigation of the case in which the receivers had been appointed, for the purpose of showing that the orders appointing the receivers were null and void, because the court had no jurisdiction or power to appoint such receivers. The defendant objected to the admission of this evidence, and the court sustained the objection and declined to admit the evidence. Ordinarily, the refusal to admit this evidence would have been error. A collateral attack on an order of the court appointing a receiver, if the court had jurisdiction and the appointment was a mistake or error by the court, will not be allowed. Such an order would be valid until reversed. Gluck & Becker on Receivers, 411. If the jurisdiction exist, the order is beyond collateral attack, though it be irregular and voidable. Alderson's Judicial Writs and Process, ch. 4. But when the appointment of a receiver of a corporation is void for want of jurisdiction over the defendant, the validity of the order appointing the receiver may properly be called in question in a collateral proceeding, and such order will be held void. 86 Tex. 571; 111 Ill. 32. The evidence was offered for the purpose of showing that the court was without jurisdiction to appoint the receivers. If it did show such, then the order was void, and, as a matter of law, no receiver had been appointed; but if we assume in this case that the order was void, it does not at all follow that the defendant company was liable in damages for the tort alleged, because whether the persons appointed exercised the power of receivers of the defendant corporation by a valid or a void order, they nevertheless, as we shall attempt presently to show, received the plaintiff's cotton and undertook to transport it as a common carrier. Having so undertaken, if they

failed, or converted the property to their own use, these facts alone would not make the corporation answerable for its value. But, however this may be, we can not pass upon the admissibility of the pleadings offered in this particular case, because neither the pleadings nor the substance of them are set out in the record, and we have no means of judging whether they would or would not show the orders appointing receivers were void as alleged. This being so, we can not, of course, say that the court erred in rejecting the evidence.

3. It can not, however, be determined, under the evidence in this case, that the delivery of the cotton for shipment was made to the defendant. The plaintiffs introduced the bill of lading. In the body of the paper it was recited that the cotton was received for shipment by the Ocean Steamship Company. On the margin it bore the names of Comer and Hayes, receivers. It was, therefore, questionable, from the instrument itself, whether it was the receipt of the receivers or the receipt of the defendant company. It was signed by Anderson as agent, per Smith. The paper was ambiguous and subject to be explained by parol evidence, and such ambiguity was fully explained by Anderson whose name appears signed to the instrument as agent, and by Smith who actually issued it. The former in express terms testified, that at the time it was issued he was the agent of the receivers, that Smith was in his employ, and that the steamship "Kansas City," by which ship the bill of lading stipulated the cotton should be forwarded, was operated by the receivers on July 9, 1895, being the date appointed for her sailing in the bill of lading. The latter testified that the stamp by which the names of the receivers were placed on the bill of lading was furnished to him by Anderson, the agent, and by his instructions the receivers' names were affixed to the instrument. If there was any evidence contrary to this, the question as whether the cotton was received by the plaintiff in error, or by the receivers as evidenced by the bill of lading, would of course be properly for a jury; but there is none, and the bill of lading must therefore be taken as the evidence of the receipt of the cotton by the receivers of the Ocean Steamship Company. The bill of lading was the evidence intro-

duced and relied on by the plaintiffs to show the receipt of the cotton by the company. It not only failed to do so, but under the evidence is in law and in fact a receipt issued by the receivers of the company. Indeed, the defendant company could not at that time legally have received the cotton for shipment. The order appointing the receiver under date of July 15, 1892, did more than make such appointment. It directed the receiver to take possession and control of the property and assets of the corporation and operate its steamships, and it enjoined the corporation, its officers, servants and agents, from interfering with the possession, operation and management of such property. It was, however, proved that the agents of the receivers were the same persons who had formerly been the agents of the corporation, but we fail to see how this fact can have any bearing on the question in issue. In *Cherry* v. *N. & S. R. R. Co.*, 59 *Ga.* 446, where service of a suit against a corporation, at the time in the hands of a receiver, was made by serving the agent of the receiver who had formerly occupied the same position for the company, this court in ruling such service not to be good as to the corporation, said, "When the public authority, by a receiver, is in possession of a railroad, and conducting its operations, the agents and employees are no longer those of the company. This is the rule where a receiver is in under a court of equity," etc., citing 55 *Ga.* It was also proved for the plaintiffs that at the time they shipped the cotton they did not know that the company had been placed in the hands of receivers, or that the receivers were operating the steamships. This fact, however, can not in any way fix or affect the liability of the company. The suit was to recover damages for what the company had wrongly done, or had wrongly omitted to do, with reference to the plaintiffs' property, by which they sustained a loss. There must therefore be some tortious act or omission of duty on the part of the defendant to the suit, in order to render a recovery possible in the case. And such want of knowledge does not in any way affect the issue.

Finally, on the question as to the liability of the company, Gen. Sorrel testified that he was the manager for the receivers on the 9th of July, 1895, the date of the issue of the bill of lad-

ing, and was so in September, 1895, that he was present in New York when these four hundred bales of cotton described in the bill of lading were sold, that they were sold under his instructions, and when they were sold he was acting in the capacity of manager for the receivers. There is no evidence in the record contradictory to this. The receipt of the cotton, its transportation to New York, the sale of it there, all were shown to have been made and done by the agents and employees of the receivers; hence, a verdict holding the defendant company responsible in damages for its conversion or negligent handling is unsupported by any of the evidence.

4. But it is urged that at the trial the defendant company was not called upon to demand that certain proceeds of the cotton, which had been paid to the consignees in Naples, should be credited upon the plaintiffs' claim, that it could have stood upon its position that the receivers, and not it, had received the cotton; but when it assumed the credit, it of necessity took with it the responsibility of the act which produced such proceeds. In his testimony the plaintiff Wilder said, " Aselmeyer, Pfister & Co. [the consignees] never got the cotton. It was never delivered to them. I have made them whole by paying to them the difference between $10,586.83, paid to them by the Ocean Steamship Company under agreement set up in the plea of the defendant, this amount arising from the sale of the cotton in New York, and the amount that they paid on my draft for the cotton." This testimony refers to an agreement set up in the plea of the defendant, in which the latter claimed to be entitled to a credit against the plaintiffs' demand in the sum of $10,586.83, by reason of the fact that in consequence of the agreement entered into November 5, 1895, between the plaintiffs, the defendant, and Aselmeyer, Pfister & Co., who were the assignees of the bill of lading, the aforesaid sum was paid to such assignees, and as to that sum the defendant pleaded payment as an accord and satisfaction pro tanto. By the agreement referred to in the plea, which was in writing and executed by counsel for the plaintiffs, defendant, and the consignee of the cotton, it was recited that should the steamship company or its receivers pay over to the plaintiffs (there being

then a suit for the purchase-price of the cotton pending between the consignees as plaintiffs and Wilder & Co. as defendants) the sum of money named above, as the net proceeds of the sale of four hundred bales of cotton, and should the plaintiffs receive the same, the receipt of the money should be held without prejudice to the rights of any of the parties to the agreement, and that the same should be applied as a credit against any claim or demand which the plaintiffs might recover against the defendants in a suit then pending, or against any claim or demand whatever which either the plaintiffs or defendants (in that suit) might have against the Ocean Steamship Company of Savannah or its receivers, growing out of the bill of lading; nor should the payment of the sum of money in any manner affect the liability of the company or its receivers to either the plaintiffs or defendants, except as a credit pro tanto upon their demand; nor should said payment be taken or held as any admission on the part of said company or its receivers of any liability growing out of the said bill of lading.    The last clause in the agreement referred to is a satisfactory answer, if any were needed, to the contention of the defendant in error above referred to.    The whole matter, as we gather it from the evidence, is, that this cotton was sold by the receivers in New York because of the alleged claim that it was not in order for transatlantic shipment; but when the consignees sued Wilder & Co., the amount which the cotton had brought was paid under this agreement to the consignees, thus reducing their claim against Wilder & Co.    When Wilder & Co. instituted the action against the defendant company, it was for the full value of the cotton, and, without admitting its liability or denying the averments of the plaintiffs' petition which alleged liability, the defendant pleaded this payment to the consignees and set up the agreement by which it appeared that the same should be a credit against any claim which either the consignees or Wilder & Co. might have against the Ocean Steamship Company of Savannah or its receivers, growing out of said bill of lading.    Under this agreement the plea was proper, and the claim in this case was entitled to be so credited, and the payment was not to be taken to the prejudice of any of the parties.    Besides, if the·

merits of such payment were to be gone into as an admission
·of liability, then the testimony of West, who was sworn for the
defendant, would become material.　In reference to the check
for the money he testified : "Lawton & Cunningham handed
me the check.　I think I got it cashed at the Citizens Bank.　I
have no doubt about the fact that I received the money from
Lawton & Cunningham ; and I understood all the way through
that I was dealing with them as counsel for the receivers of the
Ocean Steamship Company."　But in any event the plea of the
defendant of payment pro tanto can not, in our opinion, be con-
sidered as an admission of liability under the circumstances
.disclosed in the record.

From the view we entertain of the evidence, the defendant
·company was in no way bound to respond to the plaintiffs for
the damages they sustained by the wrongful acts (if such there
be) of the receivers.　The receiver is not the agent or represen-
tative of either party to an action, but is uniformly regarded as
an officer of the court, exercising his functions in the interest
of neither plaintiff nor defendant, but for the common benefit
of all parties in interest.　High on Receivers, § 1, citing a num-
ber of cases in note 2.　Being an officer of the court, the prop-
erty intrusted to his care is *in custodia legis*, for the benefit
of whoever may have finally established title thereto, the
·court itself having the care of the property by its receiver.
17 How. 322.　He is not the representative of the party or
parties, but the representative of the court.　Through and by
him the court itself acts, exercising its authority for the corpo-
ration, its creditors, and its stockholders.　Gluck & Becker, § 1.
There are cases in which he has been held officially liable for
torts, but none, of which we are informed, where the corpora-
tion whose property has been placed in his hands has been
held directly responsible in damages for his wrong-doing.　The
principle is sound that one who hold the proceeds arising from
a tortious act of another, by which the property of a third per-
son has been damaged, is liable to pay over such sum in his
hands.　We are cited by counsel for defendants in error to an
adjudicated case where there was a corrupt and collusive agree-
ment, participated in by the corporation under which the re-

ceiver was appointed; and it was held that the receiver would be treated as agent of the corporation. But such facts do not appear in any way by the evidence in this case. The question here is as to the liability of the defendant company for having received the goods of the plaintiffs as a common carrier and so negligently conducted itself as to such carriage that the goods were lost to the plaintiffs; and second, whether, having received the goods for carriage, it converted the same to its own use; and inasmuch as the evidence shows that the corporation did not receive the cotton and did not convert it, but that the receivers entered into a contract for its transportation, carried it to New York upon a steamship which they were operating, and that the cotton was sold by the agent of the receivers, with all of which, for aught that appears in the record, the corporation had nothing to do, it must be held that, under the evidence contained in the record, the corporation can not be held responsible for their acts. The court erred in overruling the motion for a new trial.

*Judgment reversed. All the Justices concurring.*