[No. 12834.  Department One.  June 9, 1916.]

WILLIAM J. CREMIDAS, *Respondent*, v. GUST DALLAS, *Appellant*.[1]

PLEADING — VARIANCE — NONSUIT — AMENDMENTS TO CONFORM TO PROOF. In an action tried to the court without a jury, it is not error to refuse to grant a nonsuit on the ground of variance, where the evidence was admitted without objection, as the complaint will be deemed amended to conform to the proof.

TROVER AND CONVERSION—REMEDIES—IMPLIED CONTRACT. Upon the conversion of a note, the owner may waive the tort and recover its value, as upon an implied contract to pay the same.

SAME—EVIDENCE—VALUE OF NOTE—PRESUMPTIONS. In an action upon an implied contract to pay the value of a note converted by the defendant, the presumption, in the absence of proof to the contrary, is that it was of the value shown upon its face; and such presumption is not overcome by proof that the note was overdue and in the hands of a bank for collection.

APPEAL—REVIEW—FINDINGS. Findings on conflicting evidence will not be disturbed on appeal where the witnesses were about equally divided and the trial court had the advantage of viewing them.

Appeal from a judgment of the superior court for King county, Humphries, J., entered December 5, 1914, upon find-

[1]Reported in 157 Pac. 1084.

ings in favor of the plaintiff, in an action on contract, tried to the court.   Affirmed.

*C. Liliopoulos,* for appellant.

*Ryan & Desmond,* for respondent.

FULLERTON, J.—In December, 1913, the respondent, Cremidas, the appellant, Dallas, and one George Stavros formed a copartnership. and opened a restaurant in the city of Seattle.   The initial cost of opening the restaurant was $1,500.   Of this sum Dallas contributed $1,000 and Stavros $500, Cremidas contributing nothing.   Cremidas was a professional cook and an experienced restaurant man, and during the time he remained in the restaurant had the management of the same, devoting his entire time thereto.   Dallas did not give any of his time to the restaurant, although he put his brother to work therein without wages other than his board and such small sum as he required for personal expenses.   Stavros devoted his time to the business for some two months, when he sold his interests to one James Vappas. Vappas took the place of Stavros in the partnership and the business was continued in the same manner as before until some time in July, 1914, when Vappas purchased the interest of the other partners.   The purchase price was $675.   Of this sum $100 was paid in cash, and notes were taken for the balance, $575, payable at later dates.   The cash payment was divided equally between Cremidas and Dallas.   The latter, however, took the notes in his own name and has since continued to hold them, claiming them as his own.

This action was instituted by Cremidas against Dallas to recover one-half of the face value of the notes.   In his complaint, however, Cremidas alleged that the restaurant was sold for $650, and demanded judgment for $275.   Dallas answered, setting forth the transaction which gave rise to the notes.

At the trial it developed that the partnership agreement between the parties was oral.   Cremidas testified—and his

testimony is corroborated by certain of his countrymen who claimed to have heard the agreement—that it was agreed between them that he was to advance nothing towards the expense of opening the restaurant, but that this expense was to be borne by the other partners, and that he was to have a third interest in the business and property in consideration of his experience, and in consideration of his agreeing to devote his entire time to the business. Dallas testified—and in this he was corroborated by Stavros—that, after the agreement to open the restaurant had been entered into, Cremidas made it known that he was unable to put up his share of the initial cost, and that he thereupon agreed to make the advancement for Cremidas and carry it until such time as it could be repaid "out of the profit of the business, if there should be any profit, and otherwise, in the course of the business."

The evidence further developed that the restaurant had made no profits. No evidence was given as to the value of the notes further than that they were overdue, that they were in a bank for collection, and that only $100 had been paid thereon by Vappas. The trial court found the facts in favor of Cremidas' version of the contract and entered a judgment in his favor for $287.50, being one-half the face value of the notes. Dallas appeals.

At the close of the evidence, the defendant moved for a judgment in his favor on the ground that there was a variance between the allegations of the complaint and the facts in evidence. But the record as brought to this court does not show that the defendant objected on this ground when the evidence was offered, and we held, as early as the case of *Murray v. Meade*, 5 Wash. 693, 32 Pac. 780, that, in an action tried before the court sitting with a jury, it was error to grant a nonsuit on this ground in the absence of such an objection, and that the court should have treated the complaint as amended to correspond with the evidence. The rule has been affirmed in many subsequent cases, and

especially in cases such as the one at bar, where the trial is by the court sitting without a jury and the case is triable *de novo* in this court.

The second contention is that the court erred in entering judgment for the face value of the notes. This conclusion is founded, if we have correctly gathered the reason, on the ground that the complaint is based on an implied promise to pay the one-half value of the notes, while the evidence shows a liability, if it shows a liability at all, as for a conversion of the notes; the contention being that an action in assumpsit will not lie to recover the value of property which has been wrongfully converted while the property remains in the possession of the wrongdoer. Since, however, the complaint must be deemed amended to correspond with the proofs, it would seem to follow that such a recovery could be had as the proofs warrant, whether that recovery be based on the theory of an implied contract to pay their value, or upon the theory of a wrongful conversion. But be this as it will, the rule in this state is not as the appellant contends. The authorities from other jurisdictions are divided on the question, and this court, in *Livingstone v. Lovgren*, 27 Wash. 102, 67 Pac. 599, followed the line of cases holding that, when one wrongfully converts the property of another, the injured party may waive the tort and recover the value of the property as upon an implied contract to pay its value. It follows, therefore, that, should we treat the action as one upon an implied contract to recover the value of property wrongfully retained but not disposed of by the defendant, there was no error on the part of the trial court in determining the action upon its merits.

Another objection against a recovery is the contention that there is no proof of the value of the notes. But their face value was shown, and the presumption is, in the absence of proof to the contrary, that the value of a note is what the maker agrees to pay. *Potter v. Merchants' Bank*, 28 N. Y.

641, 86 Am. Dec. 273; *Loomis v. Mowry,* 8 Hun 311; *Anderson v. First Nat. Bank,* 6 N. D. 497, 72 N. W. 916.

In an action for the conversion of the note the wrongdoer may, of course, prove the insolvency of the maker and thus lessen the amount of the recovery, but in the absence of such proofs, the *prima facie* case made by showing their face value becomes conclusive, entitling the plaintiff to recover the face value. The only evidence here which is thought to overcome the presumption is that the notes were overdue, were in the bank for collection, and were unpaid, save as to the sum of one hundred dollars. But these facts do not overcome the presumption, as they have no bearing on the solvency of the maker.

Finally, it is urged that the evidence does not justify the findings of the court on which a recovery was permitted. As we have shown, there was a sharp conflict in the evidence as to the interest the respondent had in the property of the restaurant. If his version is to be accepted, his right to one-half of the price for which the restaurant was sold follows as a matter of course. If the appellant's version be the true one, it is equally plain that no recovery ought to be allowed. Neither version presents the improbable, and the witnesses to the facts were about equally divided in number. In such a case, a view of the witnesses when testifying is all important, and since the trial court had this advantage, which we do not have, we do not feel inclined to disturb the findings.

The judgment is affirmed.

MOUNT, ELLIS, and CHADWICK, JJ., concur.