EDWARD WHITEHOUSE, Respondent, *v.* THE BANK OF COOPERSTOWN, impleaded, etc., Appellant.

An entry was made upon the journal of a bank in the regular day's business, charging certain mortgages held by the bank to the president and principal stockholder, who was the mortgagor, against a credit to him of a larger amount appearing upon the books of the bank.   The bookkeeper, who made the entry, had no recollection of the transaction.   The mortgages were subsequently transferred by the bank to a *bona fide* purchaser for their face, the president and the bank representing them, to be wholly unsatisfied and valid liens.

In an action by a subsequent incumbrancer to remove the liens of the mortgages,—*Held*, that the entry alone, without some evidence of its adoption by the mortgagor and the bank, was not sufficient proof of the payment of the mortgages; and the subsequent action of both, in negotiating the mortgages rebutted any inference of acquiescence or adoption. (LOTT, Ch. C., dissenting.)

(Argued September 25, 1871; decided January term, 1872.)

APPEAL from a judgment of the General Term of the Superior Court of Buffalo, affirming a judgment of the court, on the trial at Special Term, in favor of plaintiff.   It appeared that in January, 1849, five several mortgages were, for a valuable consideration, duly executed, acknowledged and delivered by Aaron D. Patchen and wife to Aaron D. Patchen as president of the Patchen Bank of Buffalo, upon certain lands in Erie county, to secure the payment of several sums of money amounting in the aggregate to something over $7,300, each of which was duly recorded in the office of the clerk of the

county of Erie, and afterward in the same month (January, 1849) duly assigned and delivered by Patchen, as president of the Patchen Bank of Buffalo, to the comptroller of this State, his successor or successors in office, or assigns, for and as a security for the redemption of the bills or notes of that bank. While these several mortgages were the property of the State' and in the possession of the banking department thereof, and on the 2d day of January, 1854, Patchen and wife executed and delivered to the plaintiff another mortgage covering the same premises described in the previous five mortgages to secure the payment to him of something over $18,000, the execution of which having been on the 9th day of February, 1854, duly acknowledged, was, in the same month, duly recorded in the office of the clerk of said county of Erie; after the execution and delivery of this mortgage to the plaintiff, and on the 20th day of February, in the same year, each of the several five mortgages by reassignment became again the property of the Patchen Bank. The plaintiff proved, under objection, by a party, that he had been a book-keeper in the Patchen Bank; that four days after these mortgages were reassigned to the Patchen Bank, he, as such book-keeper, made an entry on the journal of the bank, which appeared in that day's business of the bank, charging these five mortgages to Patchen against a credit to Patchen for a larger amount then appearing on the books of the bank; at the time of testifying, he had no recollection of the transaction. This entry was the only evidence of the payment by a surrender to Patchen of these several mortgages.

On the fifth of the following April the defendant, the Bank of Cooperstown, relying upon the representations of Aaron D. Patchen and the Patchen Bank that each of the several five mortgages were wholly unsatisfied and valid liens upon the premises in them respectively described, and in ignorance of any pretended payment of either of them, purchased them of the Patchen Bank and paid for them therefor the full amount of principal secured thereby, and received from the Patchen Bank an assignment of them; and on the day following

(April 5th, 1854) assigned the same to the superintendent of the banking department as security for the circulating notes or bills issued to it. Default having been made in the payments upon plaintiff's mortgage, he commenced an action to foreclose it. In that action the defendants here were not made defendants. Plaintiff recovered judgment of foreclosure, under which, in September of the same year, he purchased the mortgaged premises. In August following (1863) the plaintiff brought this action making Van Dyck, as superintendent of the banking department, and the Bank of Cooperstown, the only parties defendants, alleging that the five mortgages held by them as herein stated were, on or about the 24th day of February, 1854, fully paid and satisfied by Aaron D. Patchen to the Patchen Bank, and, hence, demanded that they be, as against his mortgage, declared invalid or liens subordinate to it; and the court at Special Term, upon the evidence as herein stated, found, as a fact, that on the 24th day of February, 1854, the said five mortgages were, each of them, fully paid by Aaron D. Patchen to the Patchen Bank of Buffalo, and became thereby fully satisfied; to which finding the defendants duly excepted. The legal conclusion of the court was, that the defendants five mortgages were a lien subordinate to the plaintiff's mortgage, and ordered judgment that unless the defendants redeem in six months they be forever barred; to which conclusion of law the defendants excepted. Judgment was entered as ordered.

*J. L. Burditt* for appellants. [Points not received by reporter.]

*John Ganson* for respondent. The making of the entries *per se* produced the payment. (*Jermain* v. *Denniston,* 2 Seld., 276; *Pratt* v. *Foote,* 5 Seld., 463.) The mortgages were transferred after they were paid, and as against plaintiff defendants so took them, and they cannot claim they were resuscitated as to plaintiff by any act between them and the mortgagor. (*Mickles* v. *Townsend,* 18 N. Y. R. [4 Smith],

575; *Purser* v. *Anderson*, 4 Edwards' R., 17; *Rosevelt* v. *Bank of Niagara*, 1 Hopkins, 579; affirmed, 9 Cowen, 409.) Defendant is entitled to redeem the premises from plaintiff. (*Brainard* v. *Cooper*, 6 Seld., 366; *Bogert* v. *Coburn*, 27 Barb., 230.)

GRAY, C.    This case presents but a single question for our consideration, and that is, whether the mere entry by the book-keeper of the Patchen Bank of a charge upon the journal of that bank, of which Patchen was president, and in which he was a principal stockholder of these five mortgages to Patchen against a credit to him of a larger amount appearing on its books, though the entry appeared as if it was made in the ordinary business of the bank on the day of its date, was unsupported by any evidence that Patchen desired thus to pay the mortgages, or that the bank desired to have them thus paid sufficient to justify a finding that the mortgages were paid.    The fact that Patchen was president of the bank, and one of its principal stockholders, did not destroy its individuality.    There yet remained two parties to be affected by the entry: one the Patchen Bank, and the other Aaron D. Patchen, neither of whom had the right without the consent of the other to authorize such an entry, and the book-keeper of the bank, unbidden by either, clearly had no right to make it.    He, so far as his recollection served him, was without any knowledge as to whether the parties had agreed upon such a mode of payment; his only knowledge on the subject was that the entry appeared there in his handwriting, but he was destitute of any recollection why it so appeared.    He had no right to negotiate or agree for the parties; his duty as book-keeper was limited to the entry of what others directed.    (*Potter, Receiver*, v. *The Merchants' Bank of Albany*, 28 N. Y., 641.) Unless, therefore, there was some evidence of the adoption of this entry as well by Patchen as by the bank, the inference that Patchen had in this way paid the mortgages was not justified.    What occurred after the entry, instead of affording evidence of acquiescence or adoption, establishes the

reverse.    On the fifth of the following April, the bank and
Patchen both asserting that the mortgages were wholly
unpaid, the bank for a full price sold and assigned them to
the defendants.    The Bank of Cooperstown and Patchen con-
tinued to pay the interest upon them.    There is a further
fact, not without some significance, and that is that the plain-
tiff, after the lapse of seven years after the making this entry,
foreclosed his mortgage, making a large number of persons
whom he alleged to be subordinate incumbrancers, parties;
omitting to include the defendents, thus affording an infer-
ence that these mortgages were, as all parties then under-
stood, unpaid.    It is quite unnecessary to pursue the discus-
sion, inasmuch as we may place our disposition of the case
upon authority.    (*Gibson T. Williams and others* v. *The
same defendants*, Court of Appeals not reported.)    These
cases are in all respects alike, except that in the case referred
to the mortgage was over due; in this they were not due.
This difference in fact fails to make one in principle.    The
rule of evidence is the same in each case.    The judgment
appealed from should be reversed and new trial granted, costs
to abide event.

Lott, Ch. C. (dissenting).    The findings of fact by the judge
at Special Term, were supported by considerable evidence, and
having been affirmed by the General Term on appeal, are
conclusive on us and not open to our review.    They clearly
warrant his conclusions of law.    The judgment entered
thereon must therefore be affirmed, unless the evidence given
against the defendant's exceptions, to which reference has
been made in the statement of the case, was improperly
admitted.

It consisted of entries made by a clerk of the Patchen
Bank, as he testified, in its books, in the usual course of its
business on the day of their respective dates, showing that
the five bonds and mortgages in question, were, on the 31st
day of January, 1849, credited to Aaron D. Patchen in
his individual account; that a bond and mortgage account,

kept in a journal and ledger of the bank, called bank journal
and ledger, was on the same day debited therewith, and
subsequently again credited, and a further entry under date
of 25th February, 1854, in the following terms, viz.:

" Superintendent of Bank Department,                 *Cr.*
A. D. Patchen bonds and mortgages withdrawn, $24,115.75."

The reading of the said several entries was objected to
on the part of the defendants, " on the ground that the book
is not evidence to prove any fact against them," and no other
objection thereto appears to have been given or assigned.
This ground of objection is not tenable.

The defendants held the mortgages in question under an
assignment executed after they had become due and payable,
and the entries were admissible as links in the chain of evi-
dence to show the fact of their payment to the Patchen
Bank their assignor, when it was the holder of them.

There was nothing in the ground of objection to indicate
that the matters stated in the entries were objected to as the
declarations or statement merely of their assignor.  It would
not have altered the case if such further ground had been
stated.  It is held, by the decision of this court, in *Jermain*
v. *Denniston* (2 Seld., 276), that such entries are more than
the declarations of the assignor, that they are its acts.

I, however, do not see that the defendants can in any
degree be prejudiced by their admission, — assuming them
not to have been legally admitted.  They, if disconnected
with the evidence subsequently given to prove payment, only
showed that the Patchen Bank received the bonds and mort-
gages from Aaron D. Patchen, and that at a subsequent date
credit was given therefor by it to the bank department, from
which, according to the evidence introduced by consent
(before the proof of such credit was given) they had been
received.

There is a further reason why the admission could not ope-
rate to their prejudice.

It appears that, after all those entries had been admitted,

the plaintiff introduced and read, without objection, an entry under date of February 25, 1854, as follows:

> "A. D. Patchen,                                                     *Dr.*
> "Amount of your bonds and mortgages with
>    comptroller withdrawn.................... $24,115 75"

The bonds and mortgages in question were confessedly included in, and formed part of, the above amount.

After that entry was read the witness who had testified in relation to it and the previous entries said, further, without objection thereto, as follows: "This entry is posted in individual ledger C, of the Patchen Bank, at page 1443, in the account of Aaron D. Patchen; all the entries which have been read from the several journals were in my handwriting, and were made at their date, in the usual course of business; some of the posting in the ledger is in the handwriting of Mr. Cameron, who was a clerk also in the bank; on the morning of January 31, 1849, before the mortgages were credited to A. D. Patchen, his account on the books of the Patchen Bank stood creditor $25,430.18; that is the balance standing to his credit, after deducting the debts; A. D. Patchen had a regular account with the bank kept on these books, from that time down to this time; these mortgages were charged to him on 25th February, 1854; this account is composed of daily debits and credits; at the close of the business on the 24th day of February, 1854, A. D. Patchen had a balance standing on the books of the Patchen Bank, to his credit, of $24,657.50; at the close of the business on the 25th of February, 1854, after these mortgages had been charged to him, there was a balance in his favor of $541.75 standing in the bank books;" and subsequently he, without objection, also said: "I have examined the books of the bank now here before me, and I find no entries of these thirteen bonds and mortgages in the accounts of Mr. Patchen after the 25th of February, 1854." This is followed by a statement that "the evidence of this witness as to the entries on the books of the Patchen Bank was all given with the books open before him, containing the entries spoken

of by him; and these books are all the books of the bank referring to Mr. Patchen's account." It was then proven, on the cross-examination of this witness by the defendants, that the Patchen Bank was organized in 1844, with a capital of $100,000; that the said Patchen was the principal stockholder, and that the stock not owned by him was at one time owned by Thaddeus W. Patchen, and afterward by Thaddeus Patchen, and the amount thereof was subsequently shown to be $10,000; that the witness went into it in 1847, and left in March, 1854, having been absent in the meantime (in 1852) about one year, acting part of the time as book-keeper, and part of the time as teller; and that the said Aaron D. Patchen was the president and managing officer of the bank. Under this proof, all the entries in the account of the said Patchen must be assumed to have been known to him; and as there were no entries of these bonds and mortgages in that account, found by the witness or otherwise shown, after the 25th day of February, 1854, when they were charged to him, the presumption is that he assented to that charge, and both he and the bank were, under the decision in *Jermain* v. *Denniston* (*supra*), bound thereby, and, consequently, that the evidence contained in the entries objected to was wholly immaterial, and no possible injury could result therefrom to the defendants.

It appears in the case that the admission in evidence of the judgment record, in the action for the foreclosure of the plaintiff's mortgage, was objected to, and that an objection was also made to the competency of the plaintiff as a witness, to prove that, until about the time the action to foreclose his mortgage was commenced, he did not know that the mortgages held by the defendants had been reassigned to the Patchen Bank, or that the Patchen Bank had charged them to A. D. Patchen, on the ground that the plaintiff was not a "competent witness, under section 399 of the Code, to speak to that fact," it having been shown that Patchen had died previous to the trial in July, 1864.

Both of these objections were overruled, and exceptions

were taken to the decision. They have not been urged on the argument, and I assume them to be abandoned. They were clearly not well taken.

My conclusion upon the whole case is, that there is no ground shown for the reversal of the judgment. It is, however, proper to add that the case of Williams against these same defendants, decided by the Court of Appeals in March, 1871, in favor of the defendants, in which the opinions delivered therein were cited on the argument, and copies thereof subsequently sent to us, is distinguishable from this in several respects. The bond and mortgage in question in that case were not due when they were charged to Patchen.

There was some additional testimony given in this case, and there were some findings and exceptions in that case, not in this. Under such circumstances the decision therein cannot be considered as controlling that to be made by us.

It follows, from the views above expressed, that the judgment appealed from must be affirmed, with costs.

All concur for reversal, except LOTT, Ch. C., dissenting.

Judgment reversed and new trial ordered, costs to abide event.