Julia L. Friede et al., as Executors of M. Sergey Friede, Deceased, et al., Appellants, *v.* The National City Bank of New York, Respondent.

(Argued January 14, 1929; decided February 13, 1929.)

*Alan Fox, Samson Selig* and *I. Bernard Halpern* for appellants. The deposit with the City Bank became a general asset of the Azoff Bank subject to attachment by its creditors and not a special trust fund for the Cahns. (*Wilson* v. *Randell*, 67 N. Y. 238; *Nicoll* v. *Sands*, 131 N. Y. 19; *Carthage Tissue Paper Mills* v. *Village of Carthage*, 200 N. Y. 1; *Equitable Trust Co.* v. *Rochling*, 48 Sup. Ct. Rep. 59.) No act of acceptance of the credit by the Azoff Bank was necessary to perfect the credit. (*Schell* v. *Schell*, 192 App. Div. 419; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 341; *Beaver* v. *Beaver*, 117 N. Y. 421; *Goelz* v. *Peoples Savings Bank*, 31 Ind. App. 67.) The Cahns are not entitled to recover the deposit on any analogy to the rule that a deposit in an insolvent bank after its insolvency can be recovered by the depositor. (*Metropolitan Nat. Bank* v. *Loyd*, 90 N. Y. 530; *Equitable Trust Co.* v. *Rochling*, 48 Sup. Ct. Rep. 59; *Cragie* v. *Hadley*, 99 N. Y. 131; *Legniti* v. *Mechanics & Metals Bank*, 230 N. Y. 415; *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 45 N. Y. 32; *Baldwin's Bank* v. *Smith*, 215 N. Y. 76; Michie, Banks and Banking, § 75; *People* v. *St. Nicholas Bank*, 77 Hun, 165; *Quin* v. *Earle*, 95 Fed. Rep. 728; *Terhune* v. *Bank*, 34 N. J. Eq. 367; *Williams* v. *Cox*, 97 Tenn. 555.) Interest should be allowed on the moneys from the date of the attachment at six per cent. (*McNab* v. *Morton Adver-*

*tising Co.*, 164 App. Div. 435; *Greenley* v. *Hopkins*, 10 Wend. 96; *Shaul* v. *Board of Education*, 108 App. Div. 19; *Brainard* v. *Jones*, 18 N. Y. 35; *Matter of Carnegie Trust Co.*, 161 App. Div. 280.)

*Carl A. Mead, William Harvey Reeves* and *W. Deering Howe* for respondent. The plaintiffs have no better right to the money than the Azoff Don Bank. (*Lamont* v. *Cheshire*, 65 N. Y. 30; *Williams* v. *Ingersoll*, 89 N. Y. 508; *McAllaster* v. *Bailey*, 127 N. Y. 583; *Courtney* v. *Eighth Ward Bank*, 154 N. Y. 688; *Fredrick* v. *Chicago Metal Bearing Co.*, 221 App. Div. 588.) The credit balance in current account belonged to H. & J. Cahn on October 21, 1919, when the warrant of attachment was levied. (*Bank of America* v. *Waydell*, 187 N. Y. 115; *Van Allen* v. *American Nat. Bank*, 52 N. Y. 1; *Viets* v. *Union Nat. Bank*, 101 N. Y. 563; *Roca* v. *Byrne*, 145 N. Y. 182; *Parks* v. *Knickerbocker Trust Co.*, 137 App. Div. 719; Morse, Banks & Banking [6th ed.], 804, § 346; *Farmers', etc., Bank* v. *Kings*, 57 Penn. St. 202; *Naser* v. *First Nat. Bank*, 116 N. Y. 492; *Castriatis* v. *Guaranty Trust Co.*, 229 N. Y. 74; *Cutler* v. *American Exchange Nat. Bank*, 113 N. Y. 593; *Erb* v. *Banco di Napoli*, 243 N. Y. 45; *Williams* v. *Everett*, 14 East, 592; *Wedlake* v. *Hurley*, 1 C. & J. 83; *Drovers Nat. Bank* v. *O'Hare*, 119 Ill. 646.) Title to the credit did not vest in Azoff Don Bank without acceptance. (*Metropolitan National Bank* v. *Loyd*, 90 N. Y. 530; *Kirkman* v. *Bank of America*, 165 N. Y. 132; *Baldwin's Bank* v. *Smith*, 215 N. Y. 76; *Commercial Bank of Pa.* v. *Armstrong*, 148 U. S. 50; *Simson* v. *Ingham*, 2 B. & C. 65; *Whitehouse* v. *Bank of Cooperstown*, 48 N. Y. 239; *Kingston Bank* v. *Gay*, 19 Barb. 459; *Persons* v. *Gardner*, 122 App. Div. 167; *Commercial Bank of Australia* v. *Official Assignee*, L. R. [1893] A. C. 181; *Reynolds* v. *St. Paul Trust Co.*, 51 Minn. 236.) Acceptance of the credit by the Azoff Don Bank cannot be presumed, in view of the situation in Russia. (*Cutler* v. *Am. Ex. Nat. Bank*, 113 N. Y.

593; *Nat. Butchers & Drovers' Bank* v. *Hubbell*, 117 N. Y. 384; *Commercial Bank of Pennsylvania* v. *Armstrong*, 148 U. S. 50; *Evansville Bank* v. *German American Bank*, 155 U. S. 556; *Manufacturers' Nat. Bank* v. *Continental Bank*, 148 Mass. 553; *Drovers' Nat. Bank* v. *O'Hare*, 119 Ill. 646; *American Exchange Nat. Bank* v. *Loretta, etc., Mining Co.*, 165 Ill. 103; *Anonymous*, 67 N. Y. 598; *Cragie* v. *Hadley*, 99 N. Y. 131; *Cassidy* v. *Uhlmann*, 170 N. Y. 505; *St. Louis & S. F. Ry. Co.* v. *Johnston*, 133 U. S. 566.) The plaintiffs were not entitled to interest at a higher rate than two per cent, as customarily allowed by the City Bank to the Azoff Don Bank. 1 Morse on Banks & Banking [6th ed.], § 309; *Edison Electric Company* v. *Guastabino Co.*, 16 App. Div. 350; *Columbia Bank* v. *Equitable Life Assurance Society*, 79 App. Div. 601; *Matter of Trustees*, 137 N. Y. 95; *Matter of Board of Water Commissioners*, 132 App. Div. 75; *Warner* v. *Fourth Nat. Bank*, 115 N. Y. 251; *Simson* v. *Jersey City Contracting Co.*, 165 N. Y. 193.)

*Joseph M. Hartfield* and *Vermont Hatch* for *Hirsch Cahn* et al., *amici curiæ*. The credit arising from the collection from Blumenthal at all times remained the property of the Cahns and was held by the National City Bank for their account and at their disposal. (*Williams* v. *Ingersol*, 89 N. Y. 508; *Cutler* v. *American Exchange Nat. Bank*, 113 N. Y. 593; *Legniti* v. *Mechanics & Metals Nat. Bank*, 230 N. Y. 415; *People ex rel. Zotti* v. *Flynn*, 135 App. Div. 276; *American Exchange Nat. Bank* v. *Loretta Gold, etc., Mining Co.*, 165 Ill. 103; *Commercial Nat. Bank* v. *Hamilton Nat. Bank*, 42 Fed. Rep. 880; *Armstrong* v. *National Bank*, 90 Ky. 431; *Drovers Bank* v. *O'Hare*, 119 Ill. 646; 2 Michie on Banks & Banking, 988.) If the Cahns be not regarded as the owners of the deposit at all times, they certainly became the owners of the deposit and entitled to dispose of the same after the City Bank received the cable of March

14, 1918, long before the levy of plaintiff's attachment. (*Baldwin's Bank* v. *Smith*, 215 N. Y. 76; *Russian Re-Insurance Co.* v. *Stoddard*, 240 N. Y. 149.)

O'BRIEN, J.   F. Blumenthal Company of New York owed H. & J. Cahn of Petrograd a sum in excess of $83,000.   The Cahns had an account with the Azoff Don Bank of Petrograd but none with defendant.   The two banks were correspondents and the Azoff had a debit balance approximately of $20,000 with the National City.   In November, 1917, after the Soviet revolution had been accomplished, Cahn Brothers cabled defendant to collect from Blumenthal and " credit Azowdon Bank Petrograd our account."   On December 26 Blumenthal deposited $83,716.43 with defendant " on instruction received from Messrs. H. & J. Cahn, Petrograd for account of the Banque de l'Azoff Don Petrograd."   On the same day defendant cabled the Azoff, " received Eighty three thousand seven hundred sixteen 43 H. & J. Cahn," and on the following day made this entry to the credit of that bank, " Dec. 27 pay't F. Blumenthal Co. order H. Cahn $83,716.43."   The cable sent December 26 from New York could not by any possibility have passed the British and Soviet censors and have been delivered in Petrograd as early as ten o'clock the next morning.   December 27 is the date upon which the Soviet decree abolishing private banking property rights, creating a State monopoly and taking over all bank assets and liabilities was issued. Before ten o'clock in the morning of that day a detachment of the revolutionary Red Guard took possession of the Azoff Don Bank and a commissar representing the Soviet government assumed charge.   Neither the building nor the assets have ever been restored to the former bank officials and no credit for the $83,716.43 has ever been entered upon the books of the Azoff.   In January, 1918, its capital was confiscated and the shares declared null and void.   In February H. & J. Cahn cabled defend-

ant to cancel the credit, if already entered, and to return the money to Blumenthal. Three days later they sent another message requesting the bank in New York to notify the Azoff of the cancellation and to return the money to Blumenthal. On February 26 defendant informed the Azoff, " Cahn instructs us pay Blumenthal Eighty three thousand seven hundred sixteen dollars 43. Authorize us to debit your account," and ten days later it notified the Cahns that it had cabled the bank in Petrograd for authority to refund. After the receipt of this message one of the Cahn brothers visited the bank. It was then under the control of the Soviet government and, pursuant to the decree of December 27, was in process of liquidation. The manager of the foreign department of that bank who had been retained in its service by the revolutionary government sent on March 14, at the request of Cahn and with the commissar's approval, the following message to defendant: " Your cables December 26, February 28, information payment account Cahn $83,716.43 dollars we consider cancelled. Banque Azoff Don." Defendant debited the $20,000, which the Russian bank owed, leaving an approximate balance of $63,000 which, however, it did not return to Blumenthal but retained in its own possession. This sum with accrued interest amounted approximately to $71,000 on October 21, 1919, when M. Sergey Friede commenced an action against the Azoff Don Bank. In that action he caused a warrant of attachment to be served upon the National City Bank for the purpose of reaching this deposit. In July, 1920, H. & J. Cahn sued defendant for the $83,000 and recovered a judgment exceeding $98,000. That judgment was satisfied by payment of the $71,000, with interest, to the Cahns. They indemnified defendant against liability to the present plaintiffs. This action by Friede's representatives in aid of the attachment was begun in April, 1922.

Before possession of the $71,000 can be obtained in this

action proof must be made that it was the property of the Azoff Don. The attaching creditors have no better right than had the Russian bank. The National City never regarded this balance as a trust fund for the benefit of the Cahns. It treated the credit as one establishing the relation of debtor and creditor between itself and the Azoff. No such relationship, however, was thereby created. A credit cannot be forced upon a bank or an individual. Before it can become effective, it must be accepted. (*Whitehouse* v. *Bank of Cooperstown*, 48 N. Y. 239; *Cutler* v. *Am. Ex. Nat. Bank*, 113 N. Y. 593; *Baldwin's Bank* v. *Smith*, 215 N. Y. 76, 84, 85.) Acceptance depends upon the intent of both parties (*Marine Bank* v. *Fulton Bank*, 2 Wall. [U. S.] 252; *Comm. Bank* v. *Armstrong*, 148 U. S. 50, 58, 59), but mutual intent obviously cannot exist when the facts are known to only one. Knowledge by the Azoff of the credit to it in New York could have been acquired only by some kind of communication received from defendant. (*Simson* v. *Ingham*, 2 B. & C. 65, 73.) Before such information could be imparted, the Soviet decree of nationalization became effective. Among its purposes were " the resolute eradication of banking," liberation from " exploitation by banking capital " and the establishment of a single State bank. It directed the liquidation of private banks and the temporary management of their business by a council of the State bank. The offices and assets of the Azoff were seized by the military forces of the Commune and that bank's voluntary functions were paralyzed. As long as it remained capable of transacting its business it never accepted this credit. No act indicating an intent to accept was ever performed either by the bank's officers or by any representative of the Soviet. In the face of proof that no entry of this credit was ever made on the books of the Azoff and that even defendant's messages of December 26 and February 26 were ignored until March 14, when they were answered by a rejection of the credit, no acceptance can

be implied. The relations existing between the two banks were disrupted by the upheaval of December 27. In the turbulent condition of affairs in Petrograd, with soldiery hostile to private banking interests occupying the Azoff Don offices, with liquidation confronting the bank, every presumption of acceptance is overborne. Acceptance followed by confiscation surely would create no benefit to the bank and, in the absence of some benefit, acceptance will not be presumed. (*Jackson* v. *Tallmadge*, 246 N. Y. 133, 138.)

A subordinate question is in the case. It affects the rate of interest payable by defendant on an item of $7,885.72, which is unrelated to the Cahn deposit and which was properly credited by defendant to the Azoff. This credit was not transferred to the sheriff when the warrant of attachment was served and demand made. Plaintiffs claim six per cent interest but only the current bank rate of two per cent has been awarded. We agree that only two per cent is recoverable. If the warrant had been honored and the property delivered to the sheriff, the amount of this credit would have been kept by him to answer a judgment which might be obtained against defendant (Civ. Prac. Act, § 940) until such a time as execution might be issued on such a judgment (Civ. Prac. Act, § 969). Plaintiffs are not entitled to interest against the sheriff and they possess no right to interest against defendant in excess of the usual increment to the fund on deposit.

The judgment of the Appellate Division should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and HUBBS, JJ., concur.

Judgment affirmed.