■ RICHARD RASMUSSEN, as Administrator of the Estate of MILDRED H. RASMUSSEN, Deceased, Appellant, v A.C.T. ENVIRONMENTAL SERVICES, INC., et al., Defendants, and RICHARD C. BENDALL et al., Respondents. (And Two Third-Party Actions.) [739 NYS2d 220] —Carpinello, J. Appeal from an order of the Supreme Court (Kramer, J.), entered July 11, 2001 in Schenectady County, which granted certain defendants' motions for summary judgment and denied plaintiff's cross motion to amend the complaint.

In four different transactions between 1988 and 1992, Mildred H. Rasmussen (hereinafter decedent)* loaned defendant A.C.T. Environmental Services, Inc. a total of $390,000 at the suggestion of defendant Eslin Brace, her investment advisor. The principals of A.C.T. Environmental included defendant Richard C. Bendall, an attorney who had performed legal services for decedent in the past and who had been a family friend since 1971. In addition to these loans, Brace also recommended that decedent secure bank loans made to A.C.T. Environmental by defendant Herkimer County Trust Company (hereinafter Herkimer Trust) by pledging certain securities he managed for her that were maintained in an investment account at Herkimer Trust. These securities were pledged pursuant to a 1990 hypothecation agreement signed by decedent.

The early years of these financial arrangements proved to be "extremely successful." Indeed, even though the first loan of $100,000 made in 1988 was to accrue interest at an annual rate of 13.5%, somehow decedent received a total of $41,777 in interest income on this one loan in calendar year 1989 alone. In fact, in the first year and four months, decedent received a total of $71,459 in interest and "bonus payments." The reces-

---

* Decedent died after the commencement of this action and plaintiff, her son, sole heir and administrator of her estate, has been substituted in her place.

sion of the early 1990s, however, soon brought an end to A.C.T. Environmental's asbestos removal business. In 1996, long after the business had failed, the notes had gone unpaid and Herkimer Trust had liquidated over $200,000 in the investment account to effect repayment of its loans, plaintiff sued, among others, Brace, Bendall and Herkimer Trust under a number of theories sounding generally in fraud. After discovery, these defendants sought, and were granted, summary judgment dismissing the complaint. We now affirm.

As to Bendall, even though he had previously handled the estate of decedent's husband, there is no indication in the record that he was representing decedent on any legal matters during the relevant time period. Indeed, the record reveals that Bendall never had any discussions with decedent regarding the subject loan transactions and, therefore, could not have made any misrepresentations to her upon which she relied. Moreover, since Bendall never even communicated with decedent, he certainly could not have been representing her interests vis-à-vis the loans and the hypothecation agreement which benefitted his company. We therefore reject plaintiff's contention that Bendall had a duty to disclose the deteriorating financial condition of his company. In sum, decedent's unilateral belief that Bendall had "continued" to be her attorney was insufficient to confer the status of client upon her with respect to the subject loans, such that Bendall owed her any duty of care regarding these transactions (*see, Jane St. Co. v Rosenberg & Estis,* 192 AD2d 451, *lv denied* 82 NY2d 654).

The record also confirms that Herkimer Trust exercised due diligence in ensuring that the particular risks of the hypothecation agreement were fully understood by decedent. Before effecting the pledge, the bank officer involved in the transaction insisted on meeting with decedent personally. In addition, he had both decedent and plaintiff, who had her power of attorney, countersign a letter which recited the "unusual nature" of the transaction and the fact that decedent should "understand" that if A.C.T. Environmental failed to repay its loans, Herkimer Trust could "liquidate [her] holdings to accomplish repayment." Whatever its own internal opinions may have been as to A.C.T. Environmental's creditworthiness, Herkimer Trust had no duty to advise decedent not to pledge her assets as collateral. Herkimer Trust was neither her financial advisor nor her trustee; rather it was merely the custodian of the securities in her investment account and thus owed her no duty beyond that of a bailee (*see, Friede v National City Bank of N.Y.,* 222 App Div 645, 649, *affd* 250 NY 288).

Unlike Bendall and Herkimer Trust, Brace was in fact an investment advisor to decedent. As such, he held a position of trust and owed her a fiduciary duty (*see*, *Scalp & Blade v Advest, Inc.*, 281 AD2d 882, 882-883). However, there has been no showing by plaintiff that he in fact breached this duty. First, Brace appropriately argues that plaintiff failed to plead any specific acts which constitute any alleged fraud or breach of trust on his part (*see*, CPLR 3016 [b]; *Lanzi v Brooks*, 54 AD2d 1057, 1058, *affd* 43 NY2d 778). Moreover, in opposing summary judgment, plaintiff proffered only the largely conclusory affidavits of himself and his attorney, neither of whom establish that Brace made *any* affirmative misrepresentations to either plaintiff or decedent. Nor do they particularize how Brace's recommendations constituted a deviation from the standard of care owed by an investment advisor. Indeed, the best criticism voiced by plaintiff in the record was that Brace had suggested a "faulty strategy" to decedent. Said differently, plaintiff "failed to describe any specific acts performed, representations made and/or omissions by defendant[ ] concerning the particular transactions which are challenged herein" (*Zaref v Berk & Michaels*, 192 AD2d 346, 348) sufficient to raise a question of fact.

We have reviewed plaintiff's remaining contentions, including his argument that he should have been permitted to further amend an amended complaint, and find them to be without merit.

Cardona, P.J., Mercure, Peters and Spain, JJ., concur. Ordered that the order is affirmed, with costs.